UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STEELWORKERS OF AMERICA
LOCAL 13702 on behalf of its members, a
voluntary unincorporated association,

    Plaintiff,

v.                                                  Case No. 05-73184

MIKOCEM CORPORATE
CEMETERIES,                           HONORABLE AVERN COHN

    Defendant.

_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

I.  Introduction

This is a labor case.  Plaintiff, the United Steelworkers of America Local 13702 (Local 13702) is suing defendant Mikocem Corporate Cemeteries (Mikocem) claiming breach of contract for violating the parties' collective bargaining agreement (CBA) by eliminating the positions of seven union clerical employees as part of a corporate restructuring.  The positions were to be eliminated as of August 22, 2005.

Local 13702 filed a complaint together with a request for injunctive relief, including a temporary restraining order.  On August 18, 2005, the Court granted local 13702 a TRO and set the matter for hearing on plaintiff's request for a preliminary injunction.  The hearing was held on August 26, 2005 at which the union presented testimony and exhibits.  The Court also stated that the TRO would expire at noon on August 30, 2004.  This Order formalizes the expiration of the TRO and DENIES Local

13702's request for a preliminary injunction. The reasons follow.

## II.  Background

On August 19, 2004, Mikocem became the owner of 28 cemeteries throughout Michigan, including seven unionized cemeteries in the Detroit area. The owner of these cemeteries had previously been in bankruptcy and the cemeteries were the target of many consumer complaints.

After assuming ownership, Mikocem says that it undertook a company-wide evaluation to determine productivity and efficiency. As a result of its findings, Mikocem says it designed and implemented a company-wide restructuring which included a reduction in its workforce. The third and final phase included the restructuring of duties and eliminations of positions.

At issue here are seven union clerical positions that Mikocem decided to eliminate as part of the restructuring. See Plaintiff's Exhibit 6 - Job Description (attached). Specifically, on July 22, 2005, Mikocem gave notice of the elimination of the seven clerical positions and restructuring of job duties associated with these positions, including the creation of new positions. See Plaintiff's Exhibit 2 - Notice. The seven affected employees were invited to interview for the new positions. See Plaintiff's Exhibit 5 - Job Description (attached).

Mikocem and Local 13702 are parties to a CBA effective from October 15, 2003 to October 14, 2006 which provides for a multi-step dispute resolution process culminating in final binding arbitration.

On July 25, 2005, Local 13702 filed a grievance over Mikocem's decision, stating that "Company is taking a unilateral position by eliminating the union clerical position.

Subject matter for discussion under the contract." <u>See</u> Plaintiff's Exhibit 3 - Grievance Report (attached).

On July 25, 2005, Mikocem responded to the grievance, stating: "Company is restructuring all offices in company both union and non-union. All clerical employees will be given opportunity to interview for position. Grievance denied." <u>See</u> Plaintiff's Exhibit 4 - Company Response (attached).

The grievance is now in arbitration in accordance with the CBA. Mikocem acknowledges that the arbitrator has the authority to find that the elimination of the seven positions violates the CBA and can order the reinstatement of the affected employees.

On August 17, 2005, Local 13702 filed its complaint and request for injunctive relief.

### III.  Analysis

#### A.  Jurisdiction

Mikocem initially contended that the Court lacked subject matter jurisdiction to entertain Local 13702's request for injunctive relief in this labor dispute. This argument is not well-taken. Section 4 of the Norris-LaGuardia Act, 29 U.S.C. § 104 (1973), promotes the strong federal policy favoring arbitration of labor disputes by severely limiting the jurisdiction of the federal courts to intercede in labor disputes. Section 4 provides, in part:

> No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:
>   (a) Ceasing or refusing to perform any work or to remain in any relation of employment...

Despite the broad prohibitions of section 4, the Supreme Court has recognized a "narrow exception" to the anti-injunction policy of the Act.  In The Boys Markets v. Retail Clerks Union, 398 U.S. 235 (1970), the Court articulated "a narrow exception" to the section 4, holding that when the underlying dispute is one over which the parties have agreed to arbitrate and traditional equitable bases for relief have been met, a court may enjoin a strike in violation of a no-strike clause.  While Boys Market pertained to employer initiated injunctive relief, courts, including the Court of Appeals for the Sixth Circuit, have "extended the Boys Market exception to embrace employer behavior which has had the effect for evading a duty to arbitrate or which would otherwise eliminate the arbitral process."  Aluminum Workers Intern. Union, AFL-CIO, Local Union No. 215 v. Consolidated Aluminum Corp., 696 F.2d 437, 441 (6th Cir. 1982) (citations omitted).  That is precisely the situation alleged here.  Thus, the Court has subject matter jurisdiction based on Boys Market to review Local 13702's request for injunctive relief.

### B.  Merits

In order to obtain injunctive relief, Local 13702 must establish (1) that the dispute is one which the parties are contractually bound to arbitrate, (2) that injunctive relief is warranted under "ordinary principles of equity" set forth in Boys Market which are (a) a breach or a wrong, (b) irreparable harm, and (c) the balance of harms favors injunctive relief.  See Aluminum Workers, 696 F.2d at 442.

Here, there is no question that the underlying dispute is subject to arbitration in accordance with the CBA.  Thus, this element is satisfied.

As to the equitable principals, Local 13702 has established the ongoing nature of the alleged wrong.  But for the issuance of the TRO, the seven positions would have been eliminated and the employees laid off.  It was clear that if injunctive relief was not

4

granted, Mikocem intended to implement the lay offs. Indeed, this fact led to the issuance of the TRO.

With respect to irreparable harm, however, Local 13702 faces a tougher road. "Irreparable harm is injury so great that an arbitrator's award, if forthcoming, would be inadequate to fully recompense the injured party. It renders the award an 'empty victory,' and thereby undermines the integrity of the arbitral process as thoroughly as did the union's violation of the no-strike clause in Boys Markets. Because it is this very 'frustration or vitiation of arbitration,' which justified the "narrow exception" to the anti-injunction provision of the Norris-LaGuardia Act, the irreparability of the injury suffered by the union has in many cases become virtually the sole inquiry in those cases where injunctive relief is sought against an employer." Id. at 443 (internal citations omitted).

In Aluminum Workers, the Sixth Circuit expressly held that "[a]bsent some indication of action on the part of the employer which could jeopardize its ability to reinstate affected employees or to pay them wages for the period of unemployment, we hold that loss of employment, even if occasioned by employer action which is subject to arbitration, is not irreparable harm and will not support a claim by the union for injunctive relief." Id. Thus, the Union must provide more evidence of irreparable harm than simply the loss of employment.

Local 13702 argues that any arbitrator's award (presumably for back pay and/or reinstatement) "would be inadequate to fully recompense the injured employees"... "the arbitrator's award would be meaningless, absent payment by the employer" and an "award will not restore the status quo." Local 13702, however, offers no evidence to support such an assertion that Mikocem would not be able to comply with a favorable

award.

Local 13702 cites two cases from the Fourth Circuit cases, Lever Brothers Corp. v. International Chemical Workers Union, 554 F.2d 115 (4th Cir. 1976) and Drivers, Chauffeurs, Warehousemen & Helpers, et al v. Akers Motor Lines, 582 F.2d 1336 (4th Cir. 1978) for the proposition that it has suffered irreparable harm.  In Lever Brothers, the employer advised the union that it was permanently closing its manufacturing plant in one state and transferring production to a facility in another state.  The parties disagreed as to the proper characterization to be given such action and, therefore, whether the collective bargaining contract forbade the transfer.  Finding that the dispute was one properly subject to arbitration and that the union had demonstrated a likelihood of prevailing upon the merits, the district court enjoined the transfer pending arbitration. The Fourth Circuit affirmed; however, it did not did reach the question of irreparable harm, instead holding that the district court properly issued an injunction to maintain the status quo because, absent such an order, the employees at the plant from which production was to be transferred "would have been totally and permanently deprived of their employment."  Lever Brothers, 554 F.2d at 122.

In Akers Motor Lines, the Fourth Circuit considered the propriety of Boys Markets injunctive relief against an employer who was partially liquidating his business.  The court enjoined the liquidation pending arbitration, finding that:

> If Akers-Central is allowed to continue its process of liquidation and disposition of assets, any victory by the union at the arbitration table may be meaningless. If the remaining terminals and vehicles are sold, there will be no jobs for re-assignment to Local 71 employees. If assets from ongoing operations are encumbered, there will be no fund from which to pay vacation monies. "[T]he arbitral award when rendered could not return the parties substantially to the status quo ante."

Akers, 582 F.2d at 1341.

Here, Local 13702 says that irreparable harm is established for two reasons. First, Local 13702 says that Mikocem has an "admitted near-bankruptcy financial condition" as demonstrated in its papers. This argument is not well taken. While true that Mikocem purchased the cemeteries after they emerged from bankruptcy and with the knowledge of problems with the cemeteries, there is no evidence that Mikocem is near insolvency. Certainly, Mikocem has not admitted to being in dire financial straits. There is no evidence that it is liquidating its business, assets, closing the cemetery where the seven employees are working, or is otherwise insolvent. There simply is no indication that Mikocem will not be able to comply with an award of back pay. Speculation on a failure to be able to satisfy an award is insufficient to establish irreparable harm. Importantly, whether or not the restructuring was simply cosmetic or a sincere effort at improving the company is for the arbitrator, not the Court.

Second, Local 13702 maintains that the elimination of the seven union positions - the sum total of the entire clerical bargaining unit - constitutes irreparable harm because no arbitrator could reinstate Local 13702 and its bargaining unit once they have been extinguished by Mikocem. This argument also fails to establish irreparable harm. If the arbitrator orders reinstatement, then Mikocem will have to comply with whatever attendant consequences. Local 13702 contends that if Mikocem eliminates the seven clerical positions, Local 13702 will effectively cease to exist; therefore, even if the arbitrator orders reinstatement, there will be no union to reinstate the employees.[1] As

---

[1] There is no evidence that Local 13702 is confined to the seven clerical members. Indeed, in a supplemental filing, Local 13702 says that eliminating the clerical bargaining unit positions will affect its ability to be viewed as an effective representative for "its other bargaining unit of Defendant's grounds employees," which is presumably part of Local 13702. Thus, Local 13702 will not cease to exist even if the seven positions are eliminated. It would appear that if the arbitrator orders

7

noted at the hearing, this argument is metaphysical.  Local 13702 will obviously continue to exist and represent the seven affected employees throughout the grievance process.  In a sense, the arbitrator does have the power, as Mikocem concedes, to put Humpty Dumpty back together again.

In a supplemental filing, Local 13702 also says irreparable harm is established because Local 13702 and its members will suffer "stigmatization and humiliation" by the elimination of the clerical bargaining unit and the members will suffer individually as a result of "lost income, damaged credit, loss of homes, etc."  These losses, while not insignificant, are simply not sufficient to establish irreparable harm in this Circuit.

This case is essentially no different from Aluminum Workers, where sixteen union employees faced lay offs as a result of a reorganization.  Just like the Sixth Circuit found that the union had failed to establish irreparable harm in that case, so to has Local 13702 failed in this case.

In light of finding that Local 13702 has not established irreparable harm, it is not necessary to address whether the balance of harms favors injunctive relief.

SO ORDERED.

Dated:  August 30, 2005
 s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was sent to counsel of record on this date, August 30, 2005, by electronic and/or ordinary mail.

 s/Julie Owens

---

reinstatement, the clerical bargaining unit of Local 13702 will simply be reconstituted.